IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DANTE MCKNIGHT | : CIVIL ACTION
: 
: NO. 23-3239
:
: |

# MEMORANDUM

**MURPHY, J.**                                                                                               October 5, 2023

Currently before the Court is the Amended Complaint of pro se Plaintiff Dante McKnight, a pretrial detainee currently confined at Lancaster County Prison ("LCP").[1] Named as Defendants are Cheryl Steberger, Warden of LCP; Charlie Stevens, Investigator; Lieutenant Lenard; and "Kennedy," who is identified as the "Head Mail Lady" at LCP. *See* DI 4 at 2-3. For the following reasons, the Court will grant Mr. McKnight leave to proceed *in forma pauperis* and dismiss his Complaint. He will be granted leave to file a second amended complaint.

---

[1] On August 21, 2023, the Clerk of Court docketed a four-page letter from Mr. McKnight that described events concerning interference with his mail at LCP, among other issues. *See* DI 1. Although this letter was deficient as a complaint in a civil action in a number of respects, in an abundance of caution and in accordance with its obligations under the Federal Rules of Civil Procedure, the Clerk of Court treated this letter as a federal civil rights Complaint brought pursuant to 42 U.S.C. § 1983, opened a civil action, and assigned the matter to the undersigned for review. By Order dated August 30, 2023, Mr. McKnight was instructed that his letter was not a proper complaint under the requirements of the Federal Rules of Civil Procedure and the applicable federal civil rights statutes. DI 3. For example, Mr. McKnight's letter did not identify a defendant, did not allege any legal basis for his claims, and did not set forth facts or claims in numbered paragraphs. *See id.* Moreover, Mr. McKnight had not paid the required filing fee or sought leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). Mr. McKnight was given thirty-days leave to either pay the required filing fee or seek leave to proceed *in forma pauperis*, as well as to file a proper complaint. *Id.* On September 29, 2023, Mr. McKnight filed an application to proceed *in forma pauperis* with an accompanying prisoner trust fund account statement. DI 5, 6. He also filed the Amended Complaint that is presently before the Court for consideration. DI 4.

I.     **FACTUAL ALLEGATIONS**[2]

    The allegations in Mr. McKnight's Amended Complaint are brief. *See* DI 4 at 3-12. He claims that his First Amendment rights have been "chilled." *Id.* at 3. Specifically, Mr. McKnight alleges that his legal mail "to the U.S. Justice Department and PA Law Project was seized." *Id.* at 5.[3] He also claims that Warden Steberger "failed to supervise and train L.C.P. employees Charlie Stevens and Lenard. They both seized my legal mail." *Id.* According to Mr. McKnight, Defendant Kennedy gave his legal mail to Defendants Stevens and Lenard. *Id.* at 5, 6. He further contends that Officer Schwebel of the Lancaster County Police Department, who is not named as a defendant in this action, seized the mail "after Charlie Stevens without a duly obtained search warrant." *Id.* at 5. These events are alleged to have occurred from September 2021 until "time unknown." *Id.* at 6. As relief, Mr. McKnight seeks monetary damages. *Id.*[4]

II.     **STANDARD OF REVIEW**

    The Court grants Mr. McKnight leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed

---

[2] The allegations set forth in this Memorandum are taken from Mr. McKnight's Amended Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] When describing a grievance he filed pertaining to the matter at issue, Mr. McKnight suggests that the "legal mail going to law agencies" was seized because he "had information on corruption with law enforcement allowing their [confidential informants] to operate outside the law." *See* DI 4 at 8.

[4] Mr. McKnight also requests that the Court investigate why the legal mail was seized. DI 4 at 6.) Such relief cannot be granted by the Court.

[5] Because Mr. McKnight is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Mr. McKnight is proceeding pro se, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

**III.   DISCUSSION**

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Prisoners have protected First Amendment interests in both sending and receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Turner v. Safley*, 482 U.S. 78, (1987). However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh*, 490 U.S. at 407 (quoting *Turner*, 482 U.S. at 85).

To allege a plausible interference with legal mail claim, a plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). "[A] single instance is usually not enough." *Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020) (*per curiam*). Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails. *Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006). Nonetheless, courts have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation.").

In conclusory fashion, Mr. McKnight alleges that his outgoing mail to the Department of Justice and PA Law Project were "seized" by Defendants Charlie Stevens and Lenard, and further that Defendant Kennedy gave his legal mail to Defendants Stevens and Lenard. DI 4 at

4

5, 6. Mr. McKnight presents no plausible allegation that the interference was part of a pattern and practice. Indeed, Mr. McKnight fails to plead facts against these Defendants regarding any specifics of the "seizure" of his legal mail. Consequently, Mr. McKnight has failed to state First Amendment legal mail claims against Defendants Stevens, Lenard, and Kennedy. *See Iqbal*, 556 U.S. at 678.

With respect to Warden Steberger, the Court notes that Mr. McKnight has not alleged any basis for concluding that she was personally involved in the alleged seizure of his legal mail. *See id.* at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

Instead, Mr. McKnight alleges that Warden Steberger "failed to supervise and train L.C.P. employees Charlie Stevens and Lenard." DI 4 at 5. Mr. McKnight's attempt to bring a claim against Warden Steberger based on her role as a supervisor also fails. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in

5

original)).⁶  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316.

 Mr. McKnight has set forth only conclusory allegations that his outgoing mail was seized in violation of his constitutional rights.  Even assuming that the factual allegations could be liberally construed to support constitutional claims, Mr. McKnight has not plausibly alleged a claim of supervisory liability against Warden Steberger.  Mr. McKnight has not referenced a policy or custom with respect to the alleged constitutional violation, much less has Mr. McKnight alleged sufficient facts for the court to conclude that any policy or custom caused the constitutional violation, or that Warden Steberger participated in seizing Mr. McKnight's mail, directed others to so, or, as the person in charge, had knowledge of and acquiesced in the seizure of his legal mail.  Mr. McKnight appears to draw his conclusion that Warden Steberger was responsible merely based on her supervisory role.  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *see Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2

---

⁶ "Failure to" claims, such as a failure to train, failure to discipline, or a failure to supervise are generally considered a subcategory of policy or practice liability. *Barkes*, 766 F.3d at 316-17.

(D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

## IV. CONCLUSION

As set forth more fully above, Mr. McKnight's claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Mr. McKnight will be given the opportunity to file a second amended complaint in the event he is able to cure the defects in his claims identified by this Court, if he has a good faith basis to do so. An appropriate Order as to amendment follows.